The case that we'll hear argument in is case number 232869, United States of America v. Ryan Lamar Freeman. Ms. Healy, whenever you're ready. Good morning, Your Honors. May it please the Court, Mary Kate Healy on behalf of Appellant Ryan Freeman, I'd like to reserve three minutes for rebuttal.  Thank you, Your Honor. This case involves two Kaiser issues. I'd like to focus first on the trafficking of firearms enhancement. There are two issues for the panel's consideration on this enhancement, ambiguity and harmlessness. On ambiguity, there are really two routes for the panel to find that the district court erred as we argue that the unambiguous meaning of trafficking of firearms is that an individual transfer or receive with the intent to transfer two or more firearms to a person whose use or possession of the firearms would be unlawful. To what degree that we have to decide whether it's ambiguous as applied to these facts on this case, right? It's not enough just to point to some other case in which the meaning would be ambiguous as to whether it applied. I think on Kaiser step one, if there is ambiguity in the statute, then you would look to whether the commentary reasonably interprets that ambiguity and whether the interpretation is entitled to deference. But if this case doesn't fall within the ambiguity, then it's not an issue. If it's unambiguous as applied to these facts, then we don't go any further. Your Honor, I believe it is, I think trafficking of firearms does not unambiguously cover these facts. Okay, so let's focus on that. I've come up with a range of meanings here, but I'm just not sure what meaning wouldn't cover your client. I mean, I think there are a bunch of dictionary definitions that require or strongly imply there has to be something illicit about this. But your client was not a licensed firearm dealer. He knew he wasn't a licensed firearm dealer. He was selling outside official channels. There were straw purchases. So on the buyer end, there's nothing more illegal that would have been done. For the ambiguity to reach your case, you have to show that there's something about the person you're selling to where the trafficking might require that that be a prohibited person. But I can't find any dictionary definitions or other cases. All I can find is, you know, after this case, the commentary was amended to say that. But what about the word trafficking? What source do you have to say the word trafficking requires a knowledge that the buyer be unable to purchase it? Yes, Your Honor. So I think, first, the dictionary definitions encompass trafficking as something that's usually illicit or contraband, and there's nothing about buying. Sex trafficking, right? Yes, Your Honor. Drug trafficking. Human trafficking. Trafficking in elephant ivory. Those are things where sometimes it's completely illegal to sell. Sometimes it's illegal for you to sell because you don't have permission. Trafficking in stolen goods. But what of any of those involves it being a particular kind of buyer? I think that the trafficking of firearms phrase used in the guidelines has to mean something different than dealing without a license or selling without a license. Why? What source, what dictionary, what other source tells us that? Well, I think when you look at the Sentencing Commission could have cross-referenced Section 921A1A and said we're going to enhance for four levels by... We don't ask what they could have written or could have done. Give me something that tells me that the ordinary meaning of the word trafficking requires something about the buyer being a particular kind of person, a prohibited person, something like that. Do you have a dictionary? Do you have another linguistic source that says the ordinary meaning or there's some technical legal term of art meaning that requires that? I don't have a dictionary definition that requires that for the buyer, but I have... If you look at the development of the Sentencing Commission's guidelines and then the passage of the Bipartisan Safer Community Act that says what trafficking in firearms is is now codified at 933. And that's in 2022. They provide a definition of trafficking that tracks what the Sentencing Commission's understanding of that term was in 2006 and what the ATF's understanding... How do we know based on the 2022 amendment that this is what this meant at the time of this defendant's conviction, right? Sometimes you just clarify something later on or you choose to narrow it, but you don't have any legal source at the time of this that says this is what trafficking means, a case, anything else. You've just got the commentary to the guideline. There is Joseph in this court that talks about illicit trafficking in firearms in the context of the immigration, but it does not talk, I don't believe, to what the buyer is doing. Is there anything that limits it to the context of a prohibited person in this court or any other court apart from stuff that's just reciting the commentary? Not to my knowledge, but if you find that trafficking doesn't necessarily encompass, then you could look at ambiguity and it would support the thought that perhaps there is... I'm just not seeing the ambiguity in the first place. But, okay, let's assume that there was an error here, all right? This judge said he would have gone upwards. There's a reference to going up to this range. So is it harmless? Is it highly... Can we say it's highly probable he would have come to the same sentence here regardless? He's already made it clear he's not going to stick with the lower guideline sentence even if he doesn't apply the trafficking enhancement. No, Your Honor. This error was not harmless. Where in his opinion of the record do you think there's some suggestion that he wasn't going to do the same thing? Well, I think, first, this court requires that he provide an alternative... That he... Excuse me. That this court requires that to impose an alternative sentence, the district court follow a three-step procedure. He has to identify the alternative range. He has to rule on any motions for departure or variance. And then he has to justify the selection he would have chose. Here the district court... There's not somewhere that I can point you in the record because the district court did not do that. The district court did not say I will impose the same sentence. The district court did not identify the alternative range. I'll have to ask Mr. Wenger what he thinks because the government has the burden of proving it's harmless. Correct. The government does bear that burden. And just on the point about the identification of the alternative range. This was a sentencing hearing that proceeded over two dates. At the first date, the district court initially ruled on a role enhancement in Mr. Freeman's favor. And then deferred judgment on the obstruction enhancement. At the second date, the district court then ruled again on trafficking and on obstruction. But there was an incorrect calculation initially where it thought the role enhancement continued to apply. So there's no indication that he knew both ranges when he was considering what sentence he would impose. But on the trafficking issue, the district court said... It considered the government's motion for a departure or a variance. It said... In fact, I invited that because I was concerned that the trafficking of firearms might not be reflected in the guidelines range. And it said, well, if I'm wrong and if the 2K2.1 enhancement doesn't apply, then I would have granted the government's motion to depart or vary upward. Which would get you to the same range. That's what they asked for in their motion. So given that... And then he said, well, let's talk about what specific sentence I should impose. And he heard arguments on that and came to his ruling. But so given that, how could there be... Could this error not be harmless? The district court... If we're going to give weight to the district court saying I would have departed or varied, he didn't say to what extent. And he also repeatedly emphasized Mr. Freeman's right to appeal that he was teeing this issue up for the Third Circuit so that if it came... So that if he was wrong, he wanted to make clear that these enhancements would not have applied. And it's one thing looking at what he would do on remand knowing that the range was substantially lower than what he calculated. I think the range he calculated was 46 to 57 months. Without the trafficking enhancement, it's 30 to 37. It's a substantial variance upward to get to 54 months. And I don't think on this record you can possess a sure conviction that the district court would have varied upward. Even though he might have granted a motion to vary. There's a difference between saying the range might be the same and saying the sentence would be the same. So when he says I would grant an upward departure or vary, you're saying he wouldn't necessarily have gone up the four levels that the government asked for in its motion? Right, or even if he had ended up in the same range on a departure or variance, which those were contested on the merits. And he didn't rule on the merits. He just sort of moved on. But he might not have chosen the same sentence within that range. Can I ask you, how in the world is lying to the agents not obstruction? I mean, I really don't get your argument on this one. Well, I think there is a difference between obstruction of the administration of justice and obstruction of justice. And I think Aguilar, Marinello, and Pugin speak to that tension. Aguilar and Marinello considered in Aguilar whether someone was endeavoring to influence or impede or obstruct the administration of justice. Marinello, the administration of the tax code. And they required an actual proceeding. I don't think that lying to a police officer after you've been arrested or making a false statement is related to a proceeding in the way. Nothing in those cases requires the proceeding currently be happening. It's just anticipated is usually enough. And once you've been arrested, it's anticipated that you're going to be prosecuted. Well, in Aguilar, for example, the defendant knew that a grand jury had been convened. The FBI agents informed him during the interview. But that still wasn't enough because the Supreme Court said the individual did not know that the statements he was making to the FBI were going to be presented to the grand jury. And I think the government's definition, or plain meaning, I struggle to find the limits of it. I think that it's possible that it would encompass possibly throwing contraband out of your car as you're being pursued to be sought. But this is not that case. This is about whose guns they were and how many guns there were after arrest for having the guns. This is like a heartland kind of case. This is not some borderline Aguilar type case. I think it's very similar to Aguilar in which there was a false statement uttered to law enforcement officers. And there's no indication that Mr. Freeman knew that it was going to be used in connection with the judicial proceeding. And I think the juxtaposition of administration of justice in the clause with respect to investigation, prosecution, or sentencing, that with respect to language was amended by the Sentencing Commission to encompass pre-investigative conduct. I'm sorry. I see that my time is up, Your Honors. Explain to me how an interview with police is not investigation. I think that's where the ambiguity lies in that it possibly, on the second half of the clause, is an investigation. Clearly, the police are investigating. But the attempt or the obstructive effort has to be tied to the administration of justice. And I don't think, similar to Marinello, where preparing your tax returns every year doesn't rise to the level of interfering with the administration of the tax code, giving a false statement to the police doesn't rise to the level of interfering with the administration of justice. So the ambiguity lies with administration of justice requiring a judicial proceeding, but the rest of the text seemingly encompassing all investigatory acts. And what the limit on all investigation is is unclear to me from the government's reading. Thank you, Your Honors. Thank you. I'll have you back on the bubble. Mr. Wenger, at the moment, whenever you're ready. Good morning, Your Honors, and I please the Court. Jesse Wenger on behalf of the United States. This Court should affirm the judgment below. Speaking to the traffic enhancement first, the District Court fully explained its reasoning why Mr. Freeman's conduct resulted in the sentence it imposed, regardless of the application of the traffic enhancement. So to the extent this Court finds error in the District Court's definition of trafficking, any error was harmless. As to the obstruction adjustment, the District Court rightly came to the common-sense conclusion that attempting to obstruct justice, as Mr. Freeman did here, falls within the ambit of Section 3C1.1. So on the harmless error piece with regard to trafficking, I mean, you've said that there is error. You know, it's your position that there was error. So I think you've focused us on harmlessness. And we said in United States v. RIA, the District Court must explicitly state that it would have imposed the same sentence even under the correct guidelines range. Where does the District Court explicitly state that? The District Court does not explicitly state that here, Your Honors. But this Court has been clear, going back to Langford and certainly in Zabielski, that imposing an alternative sentence following the three-step process is one way that the Court of Appeals can find harmless error. But it is not the only way. The other way, that three-step process does not get rid of the governing standard, which is, can this Court have a sure conviction that the District Court would have imposed the same sentence? It has described the case that does not follow the three-step process as a rare case. The government submits that this is a rare case, and we need to look no further than the District Court's own words and the rather unique path that this case took with regard to the trafficking enhancement. At the first sentencing hearing, the District Court said this is a paradigm case of gun trafficking. And, in fact, it is. Mr. Freeman was buying and – Enhancing error. I mean, ultimately, if this is a paradigm case of gun trafficking, then the trafficking enhancement was proper. So, Your Honor, if going with the District Court's unambiguous definition of the term trafficking would not include, for example, an individual who stole 10 guns from a gun store and then gave those 10 guns to – Maybe there are some dicta or speculations about cases beyond this case. But what you're saying is, whether it formulated the wording wrong, it was right to apply the enhancement on these facts. No, Your Honor. I would not – the government would not have conceded the error if that were our position. So why isn't this unambiguously trafficking? He's not a licensed firearm dealer. He's doing straw purchasing, you know. So, you know, we have a bunch of things going on here where there's plenty of evidence. He's concealing things. He's lying about them. Why isn't this trafficking? Does he have to know that it's a prohibited person? Your Honor, going through the three-step Kaiser process, we start at step one. Does trafficking have only one reasonable definition? On these facts. In the context of this case. I don't believe so, Your Honor, because if this court issues a precedential ruling that trafficking unambiguously contains a commercial component, as the district court's definition did, going forward, this amendment has been amended. But for any defendant who committed a crime before the 2023 amendments take effect, when they come before district court for sentencing, the district court is going to be – will have to apply that definition. The definition of trafficking that requires a commercial component. So for a defendant to come before that court who stole 10 guns from a gun store and handed those 10 guns over to another individual, I don't believe that definition would cover that conduct. And that's why – How should we define trafficking? What's the – what does trafficking mean, then, in the government's view? I believe the district court's definition was the best definition of trafficking. But I don't believe this court needs to define trafficking. This court can affirm the district court for the reason the district court provided. It's not the government's position. But if that is the path that this court takes, then that is – it's that definition or a similar dictionary-based definition of trafficking. But if this court finds that there is ambiguity to the term trafficking, then we have to proceed to steps two and three of the Kaiser-Nosir analysis. And the parties don't dispute that the commentary falls within the outer bounds of what could theoretically be a reasonable interpretation of trafficking. So – yes, sir. Sorry, Your Honor. When would this recur? And you said if this court were to issue a presidential opinion. Do we need a presidential opinion on this, given that we have the amendments now? Any future sentencing – any future sentencings will use the currently in effect guidelines, and there would be an ex post facto issue if we were to go back to this, right? Your Honor, certainly do not need to issue a presidential opinion to deal with this trafficking issue. But is it your position that this is just very unlikely to be – the version of the guidelines that were in effect at the time of Mr. Freeman's sentencing are, like, extremely unlikely to be applied in future sentencings? I don't think I could say that, Your Honor, because I can't give you an estimate within the Third Circuit how many individuals have committed a crime that would index to 2K2.1 before November 1st, 2023, that would have to apply that version of the guidelines to – But wouldn't they – they would be sentenced under the guidelines in effect on the date of their sentencing by default, unless they were to – I think it depends on the definition that this court applies to trafficking, because if an individual were to be subject to the 2023 definition of trafficking but would not be subject to the 2021 definition of trafficking were this court to apply a purely commercial-based definition to it, I believe those defendants under the ex post facto clause would actually get the benefit of the 2021 definition of trafficking. So there's some forks in the road here, but depending on how this court decides to rule in this case, it could have an impact on any number of defendants whose conduct predated November 1st, 2023. Okay. On the harmless error piece, Ms. Healy made the point that the district court said, I would have varied upward or departed upward, but it didn't say to what. I mean, the district court clearly was concerned about trafficking. It thought that the range without the 2K2 enhancement was too low. But how do we know how much it was too low? So the governing standard is whether this court has a sure conviction that the district court would have imposed the same sentence. Based on this record with statements such as – Show us where you're talking about. Where should we be looking in the sentencing record? Sure. So I'll start with the first hearing, and this is the references to trafficking and how this case was about trafficking. At Appendix 189, the district court talks about how this case was about trafficking and how this was a paradigm trafficking case. And I want to emphasize how at this point the district court is talking about the conduct at issue, putting aside the term trafficking. At Appendix 189 to 190, the district court emphasized when it was discussing about how it might kick the sentencing or when it had failed to apply the enhancement that it was going to take into consideration this conduct at a sentencing. At Appendix 191, that's where the district court takes the somewhat unusual step of inviting the government to move for an upward variance or departure to account for his then decision not to impose the enhancement. Turning to the second hearing, again at Appendix 255, the district court says, I don't think I've seen a case which better illustrates gun trafficking. This is paradigm gun trafficking. At Appendix 264, the district court explained how it was so concerned about the facts of this case because of the severity of these crimes and how it did not believe the guidelines would appropriately take into consideration this conduct had the trafficking enhancement not applied. I agree with everything you said. I ran through this again very recently. And so his concern is there, but what I'm looking for is numbers. For him to say how much that concern about the trafficking and the extent of the trafficking in this case would have reflected in his views about the appropriate range or the appropriate number of months of imprisonment. There's no place in the record, Your Honors, that has that specific number. The closest that the record gets is that the district court makes it very clear that it would have granted the government's motion had it not applied the enhancement. And that motion was for a four-level upward variance or departure to get you into the... I wonder, it seems like your best argument might be based on Appendix 269. I was marching through my record sites. If I can continue, when the district court again addresses whether it was wrong on the ambiguity issue at Appendix 269, the district court expressly states, that I think the guidelines do not adequately represent and capture trafficking of firearms, and particularly the trafficking of the firearms here, which is quite extensive. So I would grant an upward departure or vary to address that concern. Your Honor, it does not... I'm sorry, Your Honor. Yeah, exactly. I would grant an upward departure or vary. To what? So I want to come back, if I may, to some language that this court has discussed in the harmless error context in sentencing. In the United States v. Lankford, this court said it is the sentencing judge's reasoning that will often be determinative. In the United States v. Zabielewski, this court has said that when it is clear from the record that the district court correctly apprehended both the facts underlying that enhancement and the significance of those facts, it is more likely to... the error is more likely to be harmless. So Judge Friedman makes the point that normally you're going to spell out the, here's what my numbers and my level would be. But your argument is Appendix 269, he's basically doing belt and suspenders. I'm following the guidelines. The guidelines get me the right sentence. But if I were wrong, I would depart or vary upward anyway, the implication in the passage being to the same place because that is necessary to ensure a fair and reasonable sentence. Yes, Your Honor. And as this court has discussed in its harmless error context, it is more likely to the conduct and not necessarily to a range, it is more likely that the error is harmless. And in this case, from the first sentencing hearing through the conclusion of the second sentencing hearing, it is abundantly clear from the record that the district court's ultimate sentence was driven by nothing less than the specific conduct here. And that the technical application of the trafficking enhancement did not sway the sentence one way or the other. Nevertheless, the court never said I would give the same sentence. And there are cases I have said the same as a district judge. I believe that I would give the same sentence if this does not apply. And although there's a recognition of the severity of the problem, there is no exact figure given. And I find that very troublesome. Understood, Your Honor. But the record is what the record is, and I cannot point this court to a place in the record that has that exact same number. That is not how the district court approached it below. How burdensome would it be if we rule on the 2K2.1 issue and the 3C1 issue and such that all of those disputes are settled and we're just not exactly sure that he would have gotten to the exact number 54. If we were to remand for resentencing? If a majority of this panel does not have a short conviction that the district court would have imposed the same sentence, it should remand. The government's view of the record is that this court can have that short conviction. But if Your Honors do not agree, you remand to the district court, and I do not believe it would be a tremendous burden to resentence. Our view of the record is simply that this meets the legal standard for harmlessness under the sentencing context. Thank you, Mr. Winger. I'm happy to address the obstruction issue, but if the court has no questions for the government on the obstruction issue, I'm happy to rest on my briefing. Do we need to make precedent on the obstruction issue? Your Honor, I don't believe there's a need to issue a precedential opinion one way or the other. Thank you, Your Honors. Thank you, Your Honors. On harmlessness, I do believe that my opposing counsel just said there is no specific number that I can point you to. I think that means that there isn't a short conviction that the same sentence would have been imposed. And looking at the record sites, I think at 0290 and APPX 0291, the district court says, I very, very rarely give a non-guideline sentence, even though the law permits me to do that, which suggests that if the range changed, the sentence might change as well. And also, on the next page at 291, I came in thinking I was going to give you the high end of the range, and I'm going to, but I'm not going to give you the very high end. I'm going to sentence you to 54 months, three months less than the high end. And that suggests that the district court was flexible and persuaded by some of the mitigation evidence presented and chose a range or chose a sentence lower than the range that it calculated, but we don't know what that lower sentence would be on remand. But he did say this was the rare case where he was willing to give a non-guideline sentence. Appendix 269 basically says if the guidelines had been lower, he would have gone upwards. Correct, Your Honor. He said he would vary to what, but he never gave a number, and he didn't say it would be the same sentence. Briefly, Judge Freeman, you asked about how burdensome it would be if you resolved the trafficking and obstruction issues and then remanded for resentencing. I don't think it would be particularly burdensome, especially here. Mr. Freeman has served most of his sentence. He's currently at a halfway house, so there wouldn't be the logistics of moving him back to Delaware or the FTC. And he could, of course, it doesn't moot the appeal because he could ask for a credit to his supervision term if the range was too high. So this case is not about to become moot? Sorry? This case is not about to become moot in the next couple of months or anything? No, Your Honor. Garcia-Vezquez, which I believe you authored, confirms that, that the possibility of a credit to supervision is enough to keep the case alive. Okay. Very good. If the panel has no further questions. Nope. Thank you, Your Honor. Thank both counsel for an excellent and very helpful briefing and argument. We'll take the matter in advisement.